## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | ) | Chapter 15 |
| | ) | |
| THANE INTERNATIONAL, INC., *et al.,*[1] | ) | Case No. 15-12186 (KG) |
| | ) | |
| Debtors in a Foreign Proceeding. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: 12/1/2015 at 11:00 a.m. (ET)** |
| | ) | **Objection Deadline: 11/24/2015 at 4:00 p.m. (ET)** |

**RECEIVER'S MOTION, PURSUANT TO SECTIONS 105(a), 363, 365, 1501, AND 1521 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002, 6004, AND 9014, FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE APPROVAL, VESTING, AND DISTRIBUTION ORDER, (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (III) AUTHORIZING ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

Richter Advisory Group Inc. (the "Receiver"), the court-appointed receiver and duly authorized foreign representative for Thane International, Inc., Thane Direct, Inc., Thane Direct Company, West Coast Direct Marketing, Inc., TDG, Inc., Thane Direct Canada Inc., and Thane Direct Marketing, Inc. (collectively, the "Thane Debtors" or the "Thane Group") in Canadian receivership proceedings pending in Toronto, Ontario, Canada (the "Canadian Proceeding"),[2] pursuant to that certain Appointment Order (the "Receivership Order" or the "Appointment Order"), entered by the court in the Canadian Proceeding (the "Canadian Court") on October 23, 2015, and in accordance with that certain Approval, Vesting and Distribution

---

[1] The last four digits of the Employer Identification Number for each debtor follow in parentheses: Thane International, Inc. (0275), Thane Direct, Inc. (2330), Thane Direct Company (N/A), West Coast Direct Marketing, Inc. (6456), TDG, Inc. (4037), Thane Direct Canada Inc. (8064) and Thane Direct Marketing, Inc. (N/A).

[2] The Canadian Proceeding includes proceedings under both Canadian federal and provincial law. Richter Advisory Group Inc. was appointed as receiver pursuant to Section 243(1) of the *Bankruptcy and Insolvency Act* (Canada) (the "BIA") and as receiver pursuant to Section 101 of *Ontario's Courts of Justice Act.*

Order (the "Vesting Order"), also entered by the Canadian Court on October 23, 2015, by undersigned counsel, hereby moves this Court for the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "U.S. Sale Order"), pursuant to sections 105(a), 363(b), (f), (m), and (n), 365, 1501, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (a) recognizing and enforcing paragraphs 5, 19, and 21-23 of the Receivership Order and paragraphs 2, 13 and 14 of the Vesting Order, pursuant to which the Canadian Court has authorized the sale and transfer (the "Sale") by the Receiver of the Thane Debtors' right, title, and interest in and to substantially all of the business of the Thane Debtors (collectively, the "Purchased Assets") to a newly incorporated Canadian entity ("New Thane Holdco") and certain subsidiaries (together with New Thane Holdco, the "New Thane Purchasers"), pursuant to that certain Offer to Purchase (the "Purchase Agreement"),[3] by and between the Receiver and the New Thane Purchasers, dated October 16, 2015 (a copy of which is attached hereto as <u>Exhibit B</u>), free and clear of all claims, liabilities and encumbrances, except as set forth in the Purchase Agreement; (b) authorizing, pursuant to section 363 of the Bankruptcy Code, the Sale of the Thane Debtors' right, title, and interest in and to the Purchased Assets to the New Thane Purchasers, free and clear of all Interests (as defined in the U.S. Sale Order), except as otherwise provided in the Purchase Agreement; (c) authorizing and approving, to the extent provided for in the Vesting Order, the assignment of the Contracts (as defined in the Purchase Agreement); and (d) granting certain related relief. In support of this Motion, the Receiver has filed (i) as <u>Exhibit C</u>, the Receivership

---

[3]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

Order; (ii) as <u>Exhibit D</u>, the Vesting Order; (iii) and the Affidavit of Paul Findlay (the "Findlay Affidavit") (filed as Exhibit D to the Verified Petition for Recognition of Foreign Main Proceeding and Related Relief).  In further support of this Motion, the Receiver relies on the Declaration of Pritesh Patel of Richter Advisory Group Inc. (the "Patel Declaration"), and the exhibits annexed thereto, including the Report of the Proposed Receiver (the "Report") dated October 19, 2015 and the Supplementary Report to the Report of the Proposed Receiver (the "Supplemental Report" and together with the Report, collectively, the "Receiver's Report") dated October 22, 2015, attached as Exhibits 1 and 2 to the Patel Declaration respectively, and respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N) and (P).

3.      Venue is proper in this Court and in this District pursuant to 28 U.S.C. § 1410.

4.      The statutory predicates for the relief requested herein are sections 105(a), 363(b), (f), (m) and (n), 365, 1501, and 1521 of the Bankruptcy Code.  The relief is also appropriate under Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

## PROCEDURAL BACKGROUND

5.      On October 16, 2015, Bank of Montreal, in its capacity as syndication agent and administrative agent ("BMO" or the "Agent") for itself, National Bank of Canada and HSBC Bank Canada as lenders (the "Senior Lenders"), made an application under the Bankruptcy and Insolvency Act (Canada) commencing the Canadian Proceeding.  On

October 23, 2015, the Canadian Court entered the Receivership Order, which, among other things, (i) appointed Richter Advisory Group Inc. as the Receiver and authorized the Receiver to manage and operate the property of the Thane Debtors; (ii) authorized the Receiver to consummate the Sale to the New Thane Purchasers; and (iii) granted a stay of the proceedings against the Thane Debtors.

6.      On October 25, 2015 (the "Petition Date"), the Receiver commenced these Chapter 15 bankruptcy cases (the "Chapter 15 Cases") by filing, among other things, petitions on behalf of the Thane Debtors pursuant to sections 1504 and 1515 of the Bankruptcy Code (collectively, the "Chapter 15 Petitions") seeking recognition by this Court of the Canadian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.  A hearing on such request for recognition on a preliminary basis is scheduled for October 27, 2015.

## BACKGROUND FACTS

7.      Additional information about the Thane Debtors' business and operations, the events leading up to the Petition Date, and the facts and circumstances surrounding the Canadian Proceeding and the Chapter 15 Cases is set forth in detail in the Verified Petition for Recognition of Foreign Main Proceeding and Related Relief (the "Verified Petition"), filed substantially contemporaneously herewith, in the Patel Declaration (and the exhibits thereto), and in the Findlay Affidavit.  The Receiver hereby adopts and incorporates all of the factual assertions in the Verified Petition, the Patel Declaration, and the Findlay Affidavit as if set forth herein.

## A.      The Prepetition Solicitation Process

8.      As set forth more fully in the Receiver's Report and the Findlay Affidavit, prior to the commencement of the Canadian Proceeding and the Chapter 15 Cases, the Thane Debtors employed a solicitation process to identify potential purchasers.  In particular, the Thane

Group engaged SSG Capital Advisors ("SSG") to conduct the sales process, which process commenced in July 2014.  After an extensive solicitation effort, on May 22, 2015 Amir Tukulj and Russel Orelowitz, the current management of the Thane Group, entered into a letter of intent with the Senior Lenders with respect to the purchase of all or substantially all of the assets and/or shares (the "Purchase Transaction") of the Thane Group.  The terms and conditions of the Purchase Transaction are now set forth in the Purchase Agreement.

9.      The Canadian Court has authorized consummation of the Purchase Transaction, carried out by the Receiver, as the best option for maximizing and preserving the enterprise value of the Thane Debtors for the benefit of the Thane Debtors' creditors, including their employees, customers, and suppliers.  To that end, through the Vesting Order, the Canadian Court authorized and directed the Receiver to accept the Purchase Agreement.

10.     The Vesting Order authorizes the Receiver to take all actions or steps necessary to complete the transactions contemplated by the Purchase Agreement without further approval of the Canadian Court.

## B.      Summary Of Purchase Agreement And Local Rule 6004-1 Disclosures

11.     Pursuant to the Purchase Agreement, the New Thane Purchasers will acquire substantially all of the business operated by the Thane Debtors and certain of their affiliates.  The shares of New Thane Holdco will initially be owned indirectly by two of the three existing Senior Lenders (BMO and National Bank of Canada), as to a minority interest, and certain of the existing management team of the Thane Group, as to the remaining majority interest, all as is described in more detail below.

12.     The New Thane Purchasers have offered to purchase the Thane Business for a purchase price of approximately $50 million, together with the assumption of most but not all of the existing contractual and trade creditor liabilities of the Thane Debtors and the payment

of certain transaction costs. The purchase price is to be funded by way of financing to be

provided to New Thane Holdco by certain of the Senior Lenders, and the cash proceeds of the

transaction are to be immediately distributed by the Receiver and applied in reduction of the

existing indebtedness owed to the Senior Lenders.

**1.    Summary of the Purchase Agreement**

13.    The following is a summary[4] of certain material provisions of the

Purchase Agreement.[5]    The Receiver believes that the inclusion of these provisions of the

Purchase Agreement is fair and reasonable under the circumstances, is the result of good-faith,

arm's-length negotiations through the course of over one year, and is in the best interests of the

Thane Debtors, their creditors, and other stakeholders.

> a.    The New Thane Purchasers have been incorporated as Canadian
> corporations (with the exception of a subsidiary of New Thane Holdco
> that has been incorporated in the U.K. to hold intellectual property) to
> acquire the assets and shares making up the Thane Business;

---

[4]    Any summary of, or reference to, the terms and conditions of the Purchase Agreement, the Receivership Order, and/or the Vesting Order herein are qualified in their entirety by the actual terms and conditions of the Purchase Agreement, the Receivership Order, and the Vesting Order. To the extent there is any inconsistency between any such summary or reference herein and the actual terms and conditions of the Purchase Agreement, the Receivership Order, and the Vesting Order, the actual terms and conditions of the Purchase Agreement, the Receivership Order, and/or the Vesting Order shall control.

[5]    Pursuant to Local Rule 6004-1(b)(iv), a Sale Motion (as defined in the Local Rules) must highlight certain provisions contained in the proposed form of sale order and/or the underlying purchase agreement. The Receiver has highlighted below the relevant provisions of the Purchase Agreement that implicate Local Rule 6004-1(b)(iv) by providing a citation, in bold, to the relevant sections of the Purchase Agreement, with an accompanying parenthetical identifying the Local Rule implicated. In addition, the Receiver highlights that, pursuant to the proposed U.S. Sale Order, it is requesting (i) the Sale to be approved under section 363(f) of the Bankruptcy Code free and clear of any Interest (as defined in the U.S. Sale Order) and (ii) a waiver of Bankruptcy Rule 6004(h).

b. BMO and National Bank of Canada[6] (the "Participating Lenders"), through an intermediary holding company, will hold a total of 35% of the initial overall equity in New Thane Holdco (the "Participating Lender Equity");

c. Amir Tukulj and Russel Orelwitz, on behalf of themselves and other members of the senior management of the Thane Group (the "Management Shareholders"), will hold a total of 65% of the initial overall equity in New Thane Holdco;

d. The Participating Lenders and the Management Shareholders have entered into a Shareholders Agreement dated as of October 16, 2015 governing their rights and obligations as shareholders of New Thane Holdco (the "Shareholders Agreement") which includes, among other things, provision for reductions in the equity interest of the Participating Lenders upon certain repayment events in relation to the New Thane Term Loan (defined below) and for various control and sale rights and obligations, all in accordance with the detailed provisions of the Shareholders Agreement;

e. Pursuant to the Purchase Agreement, the New Thane Purchasers will purchase the assets of the Thane Group and the shares of subsidiary companies which make up the Thane Business, for a cash purchase price of $50,000,000, plus the assumption by the New Thane Purchasers of the large majority of the unsecured liabilities of the Thane Group and the payment of certain transaction costs, all in accordance with the provisions of the Purchase Agreement;

f. Among other things, the Purchase Agreement is conditional on approval by the Canadian Court and by this Court;

---

6    HSBC Bank Canada is a Senior Lender and part of the syndicate participating in the credit facilities made available to the Thane Group; however, HSBC Bank Canada will not be an indirect shareholder of New Thane Holdco in the manner of BMO and National Bank of Canada.  Instead, HSBC Bank Canada will enter into an agreement with BMO and National Bank of Canada under which it will be entitled to monetary compensation based on an agreed percentage of any returns realized on the Participating Lender Equity.

g. Among other things, the Purchase Agreement is also conditional on approvals from the Office of the Superintendent of Financial Institutions ("OSFI") permitting the Participating Lenders to hold their indirect equity ownership in New Thane Holdco;[7]

h. Certain of the Senior Lenders have agreed to provide term financing to New Thane Holdco, conditional on the closing of the Purchase Transaction and on the terms of a credit agreement negotiated with the Management Shareholders (the "New Thane Credit Agreement") under which the Senior Lenders will advance the $50,000,000 cash purchase price to New Thane Holdco, on a fully secured and senior basis (the "New Thane Term Loan");

i. The Participating Lenders (*i.e.,* not including HSBC Bank Canada) have agreed to provide operating financing to New Thane Holdco conditional on the closing of the Purchase Transaction and on the terms of the New Thane Credit Agreement, up to a maximum principal amount of $6,000,000, also on a senior secured basis (the "New Thane Operating Loan"); and

j. The Management Shareholders have agreed to provide a term loan to New Thane Holdco in the amount of $2,000,000, pari passu with the New Thane Term Loan and on comparable terms and conditions but subordinate to the New Thane Operating Loan.

14.    The Purchase Agreement specifies the assets and shares of the members of the Thane Group which will be acquired by the New Thane Purchasers. The chart below sets out what is being sold in relation to each of the Thane Debtors:

---

[7]    The Receiver is advised that the *Bank Act* (Canada) imposes a variety of restrictions on the ability of Canadian banks to hold equity interest, including limits on the periods of time during which an equity position can be held. The commercial basis for the Purchase Transaction and for the Participating Lenders' interest in the equity of New Thane Holdco requires that OSFI approve the ownership by the Participating Lenders of a "substantial interest" in New Thane Holdco for a period of more than 5 years.

| Thane Receivership Company | Assets/Shares Being Sold | Purchaser |
|---|---|---|
| Thane International, Inc. | IP Assets | 652134 Limited ("New Thane IPCO (UK)") |
| | Other Assets | 635427, Inc. ("New Thane US") |
| Thane Direct, Inc. | Shares – 80% equity interest in Grupo Mejor Compra SAPI de CV | 9472541 Canada Inc. ("New Thane Holdco") |
| | Other Assets | New Thane Holdco |
| Thane Direct Company | Shares:<br>• Danoz Direct Pty Ltd.<br>• TVNS Scandanavia AB<br>• Thane Direct UK Ltd. | New Thane Holdco |
| | IP Assets | New Thane IPCO (UK) |
| | Other Assets | 9472550 Canada Inc.("New Thane Canada") |
| | IP Licence with New Thane IPCO(UK) | New Thane Canada |
| Thane Direct Marketing Inc. | Shares:<br>• Medio Latino Inc.<br>• Thane USA, Inc. | New Thane U.S. |
| | Other Assets | New Thane Canada |
| West Coast Direct Marketing, Inc. | Other Assets | New Thane U.S. |
| TDG, Inc. | Other Assets | New Thane U.S. |
| Thane Direct Canada Inc. | IP Assets | New Thane IPCO (UK) |
| | IP Licence with New Thane | New Thane Canada |

| Thane Receivership Company | Assets/Shares Being Sold | Purchaser |
|---|---|---|
| | IPCO (UK) | |
| | Other Assets | New Thane Canada |

15.     The shares of each of the Thane Debtors and the interests of the Thane Debtors in a limited number of excluded Contracts identified under the Purchase Agreement are not being sold.

16.     It is intended that the Thane Debtors and those affiliates whose shares and assets are not being sold will be wound down following the completion of the Purchase Transaction.  The liabilities for most unsecured creditors, including in particular trade suppliers, will be assumed by assumption of the liabilities associated with Assumed Contracts.  The New Thane Purchasers will not be assuming liability for any outstanding lawsuits or for liabilities associated with contracts specifically excluded from the Purchase Transaction.  Nor will the New Thane Purchasers assume any liability for any taxes that might be incurred as a result of the Purchase Transaction.

17.     The Canadian Court has authorized the Receiver to make an immediate distribution of the cash purchase price paid by the New Thane Purchasers (which cash purchase price is being advanced by the Lenders under the New Thane Term Loan) as a payment on account of the indebtedness currently outstanding to the Senior Lenders.  *See* Vesting Order ¶ 6. If the Purchase Transaction is approved and closes, the indebtedness currently outstanding to the Senior Lenders will be reduced by approximately $50 million.

### 2. Local Rule 6004-1 Disclosures

18.     In accordance with Local Rule 6004-1, set forth below are certain provisions in the Purchase Agreement and/or the Sale Order that such rule requires the Receiver to highlight in this Motion:

| Highlighted Provision | Description | Location in Sale Order and/or Purchase Agreement |
|---|---|---|
| Sale to Insider | The New Thane Purchasers are, in part, members of the management of the Thane Debtors, and, therefore, insiders as defined by Bankruptcy Code section 101(14). | N/A |
| Management Agreements | The New Thane Purchasers intend to hire substantially all of the existing employees of the Thane Debtors. | Purchase Agreement §§ 1.19, 2.9 |
| Releases | The Sale will be free and clear of all Interests.<br><br>None of the New Thane Purchasers will be liable to any Thane Debtor or any predecessor or successor to such Thane Debtor arising out of the Sale and/or Purchase Agreement except as set forth in the Receivership Order, the Vesting Order, and/or the Sale Order. | Sale Order ¶¶ S, 6, 7, 9, 11<br><br>Sale Order ¶ 8 |
| Private Sale /No Competitive Bidding | The Sale is a private sale. The New Thane Purchasers' Purchase Agreement will not be subject to higher and better offers at a public auction subject to procedures established by this Court.[8] | Sale Order ¶¶ 3, 6 |

---

[8]     As noted above and in The Findley Affidavit and the Patel Declaration (and the attachments thereto), the Sale is the result of a thorough solicitation and sale process conducted by SSG that has extended over a year. As set forth herein, the Receiver believes that this process, resulting in the Purchase Agreement with the New Thane Purchasers, has produced the highest and best offer for the assets of the Thane Debtors.

| Highlighted Provision | Description | Location in Sale Order and/or Purchase Agreement |
|---|---|---|
| | Through this Motion, the Receiver seeks the approval by this Court of a sale already approved by the Canadian Court. | |
| Closing and Other Deadlines | The second Business Day following the date of entry of a recognition order by this Court recognizing the Receiver as the authorized foreign representative and approving the Sale (unless the New Thane Purchasers provide written notice of intent to close on the fourteenth date following such entry). | Sale Order § 1.1.21 |
| Good Faith Deposit | None. | |
| Interim Agreements with the New Thane Purchasers | None. | |
| Use of Proceeds | The Receiver shall pay all cash proceeds of the Sale to the Agent for the Secured Lenders . | Not provided in Sale Order or Purchase Agreement but included in Vesting Order, recognition of which the Receiver has requested by separate petition. |
| Tax Exemption | None.  The New Thane Purchasers have not agreed to assume any liabilities that might arise as a consequence of any cancellation of indebtedness income and, to the extent that any such liabilities arise, the Thane Debtors will have no funds available to pay such tax obligations. | Purchase Agreement § 2.8.1 |
| Record Retention | The Thane Debtors will be selling substantially all of their assets.  It is anticipated that the Thane Debtors will thereafter be promptly wound down under applicable law and these Chapter 15 bankruptcy cases will be | |

| Highlighted Provision | Description | Location in Sale Order and/or Purchase Agreement |
|---|---|---|
| | closed. | |
| Sale of Avoidance Actions | Not Applicable. | |
| Requested Findings as to Successor Liability | To the extent permissible under the Receivership Order and the Vesting Order, none of the New Thane Purchasers, or their affiliates, members, and shareholders shall be deemed, as a result of any action taken in connection with the Sale or the New Thane Purchasers' post-closing use or operation of the Purchased Assets, to: (a) be a successor to the Thane Debtors; (b) have, de facto or otherwise, merged or consolidated with or into the Thane Debtors; or (c) be a continuation or substantial continuation of the Thane Debtors or any enterprise of the Thane Debtors, based on any theory, including based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity. | Sale Order ¶ 10 |
| Sale Free and Clear of Unexpired Leases | Not Applicable | |
| Credit Bid | Not Applicable | |
| Relief from Bankruptcy Rule 6004(h) | Yes | Sale Order ¶¶ N, 23 |

**RELIEF REQUESTED**

19.    By this Motion, the Receiver respectfully requests that this Court enter the

U.S. Sale Order, substantially in the form annexed hereto as <u>Exhibit A</u>, pursuant to

sections 105(a), 363(b), (f), (m), and (n), 1501, and 1521 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004, and 9014 and Local Rule 6004-1: (a) recognizing and enforcing the

Receivership Order and the Vesting Order; (b) authorizing the Sale of the Thane Debtors' right,

title, and interest in and to the Purchased Assets free and clear of any and all Interests;

(c) authorizing and approving, to the extent provided for in the Vesting Order, the assignment of

the Contracts as providing in the Purchase Agreement; and (d) granting certain related relief.

           20.     The Receiver believes that the Sale of the Purchased Assets in accordance

with the terms and conditions of the Purchase Agreement, the Receivership Order, the Vesting

Order and the U.S. Sale Order represents the best realization of value for the Thane Debtors'

creditors and other stakeholders under the circumstances.  Pursuant to section 4.3.3 of the

Purchase Agreement, entry of the U.S. Sale Order, substantially in the form annexed hereto, is a

condition precedent to the consummation of the Sale.  This Court's recognition and approval of

the Receivership Order and Vesting Order will permit the Receiver to sell the Purchased Assets

without disruption and in a timely and efficient manner.  Absent the relief requested herein, the

Thane Debtors, their creditors, and their employees, will potentially suffer significant, if not

irreparable, harm due to an inability to close the Sale.

## BASIS FOR RELIEF REQUESTED

### A.    The Court Should Recognize and Enforce the Receivership Order and Vesting Order and Authorize the Sale Pursuant to Section 363 of the Bankruptcy Code.

           21.     Section 363 of the Bankruptcy Code applies to the sale of any of the

Purchased Assets located within the territorial jurisdiction of the United States.  *See* 11 U.S.C. §

1520(a)(2); *see also In re Fairfield Sentry Limited,* 768 F.3d 239 (2nd Cir. 2014).

Section 363(b)(1) provides, in relevant part, that a debtor "after notice and a hearing, may use,

sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C.

§ 363(b)(1).  Section 363 of the Bankruptcy Code does not set forth a standard for determining

when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to

confirmation of a plan.  However, courts in this Circuit, and in other districts, have required that

the decision to sell assets outside the ordinary course of business be based upon the sale

proponent's sound business judgment.  *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward*

*Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In*

*re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991); *see also In re Abbotts Dairies*

*of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389,

395 (3d Cir. 1996).

        22.      The "sound business judgment" test requires a proponent of a sale to

establish four elements in order to justify the sale of property outside the ordinary course of

business.  These factors are (a) that a "sound business purpose" justifies the sale of assets outside

the ordinary course of business, (b) that adequate and reasonable notice has been provided to

interested persons, (c) that the trustee or debtor in possession has obtained a fair and reasonable

price, and (d) that the purchaser has acted in good faith.  *See In re Abbotts Dairies of*

*Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr.

D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R.

396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D.

Pa. 1989).

        23.      In this case, ample business justification exists to sell the Purchased Assets

to the New Thane Purchasers.  The Sale satisfies all four conditions set forth in *Abbotts Dairies*.

First, sound business purposes justify the Sale.  The Sale presents the best opportunity for the

Thane Debtors to maximize the value of their assets.  Approval of the Purchase Transaction will

permit the Thane Business to continue and its suppliers and employees to have the benefit of

continuing contracts and jobs.  Moreover, the consideration received by the Thane Debtors in connection with such Sale represents fair value for the relevant assets and shares to be transferred.

24.      In contrast, the alternative to the Purchase Transaction, a liquidation, would result in recoveries of very substantially less than the value attributed to the Thane Business as a going concern in the context of the Purchase Transaction with the New Thane Purchasers.  Specifically, based on the valuation information available to the Receiver, neither a liquidation nor any alternative going concern sale of the Thane Business would provide value sufficient to retire the Senior Lenders' properly perfected and senior secured loans and a liquidation would be likely to significantly increase the Senior Lenders' losses on their existing senior secured debt.

25.      Second, in light of the sale process that the Thane Debtors have undertaken to date, adequate and reasonable notice of the proposed Sale has been provided to interested persons.  Moreover, all known creditors (except those parties whose contracts are being assumed under the terms of the Purchase Agreement),[9] holders of Interests, and parties to Contracts that may be rejected  pursuant to the Purchase Agreement are being served with notice of this Motion.  Indeed, the Canadian Court has already approved similar notice provisions in the Canadian Proceeding.

26.      Third, the Purchase Price represents a fair and reasonable price for the Purchased Assets.  Indeed, the Purchase Price, which is $50 million, far exceeds the highest amount previously offered by a potential purchaser during the prepetition marketing process.

---

[9]      The Receiver has requested entry of an order (by separate motion) that will permit more limited notice in light of the circumstances of these Chapter 15 bankruptcy cases.

27.     Fourth, as discussed more fully below, and as described in the Receiver's Report and the Findlay Affidavit, the negotiation process undertaken with respect to the Purchase Agreement satisfies the good faith requirement.  Indeed, the Purchase Agreement is the product of good faith and arm's-length negotiations among the parties.

28.     In addition, granting the requested relief is in the public interest.  Indeed, the purpose of chapter 15 of the Bankruptcy Code is:

> [T]o incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
> (1) cooperation between—
>
>> (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>>
>> (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2) greater legal certainty for trade and investment;
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtor's assets; and
>
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

29.     Courts in this District have granted relief similar to the relief requested in this Motion.  *See, e.g., Xchange Technology Group LLC*, Case No. 13-12809 (KG) (Bankr. D. Del. Nov. 25, 2013) (recognizing and enforcing sale order entered by Canadian court and separately authorizing and approving sale free and clear of any and all liens, claims, encumbrances and other interests under section 363 of the Bankruptcy Code and approving the assignment of assumed contracts); *Arctic Glacier International Inc.*, Case No. 12-10605 (KG)

(Bankr. D. Del. July 17, 2012) (same); *In re EarthRenew IP Holdings LLC*, Case No. 10-13363

(CSS) (Bankr. D. Del. Feb. 18, 2011) (recognizing and enforcing sale order entered by Canadian

court and separately authorizing and approving the sale free and clear of any and all liens,

claims, encumbrances and other interests under section 363 of the Bankruptcy Code); *In re*

*Grant Forest Products*, Case No. 10-11132 (PJW) (Bankr. D. Del. April 26, 2010) (same); *In re*

*Destinator Technologies Inc.*, Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) (same).

30.     This Court's recognition and enforcement of the Receivership Order and

the Vesting Order is not only warranted but is critical to achieving the anticipated results of the

Sale, as it will permit the Receiver to sell the Purchased Assets without disruption and provide

further certainty to the Sale and to the Purchaser.  As noted above, entry of the U.S. Sale Order is

a condition precedent to the consummation of the Sale.  Absent the relief requested herein, the

Thane Debtors will likely suffer substantial, if not irreparable, harm from the inability to sell the

Purchased Assets without interference and in a manner that will allow the Thane Debtors to

maximize recoveries for all creditors and other stakeholders.

31.     For all of the foregoing reasons, the Receiver respectfully submits that

there is more than ample justification for this Court to enter the U.S. Sale Order, thereby

recognizing and enforcing the Receivership Order and the Vesting Order and authorizing the

Sale pursuant to section 363 of the Bankruptcy Code.

**B.     The Court Should Authorize and Approve the Sale Free and Clear of Interests and Successor Liability Pursuant to Section 363(f) of the Bankruptcy Code.**

32.     The Receiver also respectfully requests that this Court authorize the Sale

free and clear of Interests (as defined in the U.S. Sale Order).  Under section 363(f) of the

Bankruptcy Code, a trustee or a debtor in possession may sell all or any part of a debtor's

property free and clear of any and all liens, claims, encumbrances, and other interests in such

property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party

asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the

purchase price for the property is greater than the aggregate amount of all liens on the property,

(iv) the interest is the subject of a bona fide dispute, or (v) the party asserting the lien, claim or

interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for

such interest.  *See* 11 U.S.C. § 363(f); *In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 93-94

(Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens …

Section 363(f) addresses sales free and clear of any interest …."); *Citicorp Homeowners Serv.,*

*Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the

Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and

clear" provided at least one of the subsections is met).  In addition, a court may authorize the sale

of a debtor's assets free and clear of any liens, claims or encumbrances under section 105 of the

Bankruptcy Code.  *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White*

*Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such

sales [free and clear of liens] is within the court's equitable powers when necessary to carry out

the provisions of Title 11.").

33.      A sale of the Purchased Assets other than one free and clear of all

Interests, except as otherwise provided in the Purchase Agreement, would yield substantially less

value for the Thane Debtors and their creditors than the Sale.  Therefore, a sale free and clear of

all Interests is in the best interests of the Thane Debtors, their creditors, and other parties in

interest.

34.      With respect to any creditors that may assert an Interest in the Purchased

Assets, the Receiver submits that at least one of the subsections of 363(f) of the Bankruptcy

Code applies to such creditors and, in most cases, more than one of such subsections is satisfied. Notably, the Senior Lenders have consented to the Sale. Accordingly, the Receiver submits that the sale of the Purchased Assets free and clear of all Interests, other than as provided in the Purchase Agreement, satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

35.    Furthermore, it is well established that a bankruptcy court has the power under section 363(f) to approve the sale of a debtor's assets free and clear of successor liability claims against the debtor. *In re TWA Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (holding that successor liability claims are "interests in property" within the meaning of section 363(f) of the Bankruptcy Code); *United Mine Workers of Am. Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996) (same). Therefore, the Receiver respectfully requests that this Court authorize the Sale of the Purchased Assets to the New Thane Purchasers free and clear of claims based upon successor liability. In this way, the New Thane Purchasers will obtain increased certainty concerning the Excluded Liabilities as to the Purchased Assets in the United States. The Receiver submits that the relief requested herein is an appropriate exercise of this Court's authority under chapter 15 of the Bankruptcy Code, does not conflict with the relief granted by the Canadian Court in the Receivership Order, and does not conflict with the Vesting Order.

**C.    This Court Should Recognize the Canadian Court's Authorization to Assign the Assumed Contracts to the New Thane Purchasers.**

36.    The Purchase Agreement requires, as an integral part of the Sale, the assignment of certain contracts. *See* Purchase Agreement § 2.3. Moreover, through the Vesting Order, the Canadian Court has approved the Purchase Agreement. *See* Vesting Order ¶ 2. Specifically, the Vesting Order, among other things, authorizes the Receiver to enter into the

Purchase Agreement and further provides that "the Receiver is . . . authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the [Sale] Transaction[s] and for the conveyance of the Assets to the New Thane Purchasers . . . ." <u>Id</u>.   Finally, the Appointment Order expressly prohibits parties to contracts from failing to perform or otherwise attempting to terminate such contracts without the consent of the Receiver or the leave of the Canadian Court.  *See* Appointment Order ¶¶ 9-10.

37.    It is an appropriate exercise of business judgment for the Thane Debtors to agree to assign the assumed Contracts as required under the Purchase Agreement.  Additionally, the Receiver submits that the notice and protections for counterparties set forth in the Vesting Order and implemented in the Canadian Proceeding are adequate to protect the rights of counterparties to the contracts and are consistent with the relief typically afforded to debtors and purchasers under sections 363 and 365 of the Bankruptcy Code.  Moreover, the New Thane Purchasers are able and have agreed to assume and perform the obligations of the Thane Debtors under the Assumed Contracts in accordance with their terms.  As such, the Receiver respectfully submits that enforcement in the United States of the assignment of the Assumed Contracts to the New Thane Purchasers does not present any public policy conflict or any issue concerning protection of the interests of the parties to the Assumed Contracts that would prevent this Court from entering the U.S. Sale Order.

**D.     The Court Should Afford the New Thane Purchasers All Protections under Sections 363(m) and (n) of the Bankruptcy Code as a Good Faith Purchaser.**

38.    In addition to the relief requested above, the Receiver requests that the New Thane Purchasers receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code.  Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property

> does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re Abbots Dairies of Pa.*, 788 F.2d at 147.  Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]"  *Id.*

39.     As described in the Receiver's Report and the Findlay Affidavit, the Purchase Agreement was negotiated without fraud or collusion, in good faith, and from an arm's-length bargaining position.  Nor did the Thane Debtors or the Receiver enter into the Purchase Agreement for the purpose of hindering, delaying, or defrauding present or future creditors of the Thane Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.  To the Receiver's knowledge, no party has engaged in any conduct that would cause or permit the Purchase Agreement to be set aside under section 363(n) of the Bankruptcy Code.  Accordingly, the Receiver seeks a finding that the New Thane Purchasers are good faith purchasers under section 363(m) of the Bankruptcy Code and have not violated section 363(n) of the Bankruptcy Code.

## WAIVER OF RULE 6004(h)

40.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . .  is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Receiver requests that the U.S. Sale Order, once entered, be effective immediately by providing that, to the extent applicable, the 14-day stay under Bankruptcy Rule 6004(h) is waived.

41.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen (14) day stay period, commentators have suggested that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy, ¶6004.11 (L. King, 16th rev. ed. 2011).[10]  Moreover, it has been suggested that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

42.     Time is of the essence with respect to the U.S. Sale Order.

43.     Accordingly, the Receiver hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

44.     On October 25, 2015, the Receiver filed the Motion For Order Scheduling Hearing on Verified Petition Under Chapter 15 For Recognition of a Foreign Main Proceeding and for Additional Relief and Assistance Under 11 U.S.C. §§105(a), 1507, and 1521 and Specifying Form and Manner of Service of Notice of Hearing [Docket No. 8] (the "Notice Motion").  Pursuant to the Notice Motion, the Receiver sought to serve the following core parties (collectively, the "Core Notice Parties")[11] with all pleadings in these cases, via United States

---

[10]     No objections to the Sale were raised in the Canadian Proceedings and the Canadian Court has already approved the Sale.

[11]     Capitalized parties included in the Core Notice Parties shall have the meanings ascribed to them in the Petition for Recognition.

first-class mail:  (i) counsel to the Senior Lenders and the Agent; (ii) counsel to the New Thane Purchasers; (iii) Canadian Department of Justice; (iv) Internal Revenue Service; (v) counsel to the Debtors in the Canadian Proceeding; (vi) the Debtors; (vii) the Office of the United States Trustee for the District of Delaware; (viii) the Ontario Revenue Collections Branch; (ix) Ministry of Finance; (x) Office of the United States Attorney for the District of Delaware; (xi) Delaware Secretary of State; (xii) United States Securities and Exchange Commission; (xiii) Delaware State Treasury; and (xiv) any party that files a notice of appearance in these Chapter 15 Cases. The Receiver further proposed to serve the following notice parties (the "Notice Parties") with only a notice of hearing and related objection deadline with respect to the Verified Petition, via United States first-class mail: (i) all persons or bodies authorized to administer foreign proceedings of the Debtors; (ii) all entities against whom provisional relief is being sought under section 1519 excluding those certain counterparties to contracts being assumed through the Purchase Transaction ("Excluded Service Parties"); and (iii) all parties to litigation pending in the United States in which the Debtors are a party as of the Petition Date.

45.     Similarly, notice of this Motion (including all exhibits hereto) was served on the Core Parties.  The Receiver further intends to serve a notice containing the hearing date, objection deadline, and counsel's contact information for a copy of the Motion on the Notice Parties when a hearing date is set by the Court for the Motion.  In addition, the Receiver intends to serve the Notice of Hearing on any entity with an Interest in the Purchased Assets, which interest is evidenced by a filing of such security interest with the appropriate agency for filing under the Uniform Commercial Code in the United States or the Personal Property Security Act in Canada.  For all the reasons set forth in the Notice Motion, the Receiver submits that no other or further notice need be provided.

**NO PRIOR REQUEST**

46.    No prior request for the relief sought in this Motion has been made to this or any other court.

**CONCLUSION**

Wherefore, the Receiver respectfully requests that the Court enter the U.S. Sale Order, substantially in the form annexed hereto as <u>Exhibit A</u>, granting (i) the relief requested herein, and (ii) such other and further relief as the Court may deem proper.

Dated: October 27, 2015
       Wilmington, Delaware

/s/ Mark L. Desgrosseilliers
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Morgan L. Patterson (Del. Bar No. 5388)
Nicholas T. Verna (Del. Bar No. 6082)
Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone:  (302) 252-4337
Facsimile: (302) 661-7738
E-mail: mdesgrosseilliers@wcsr.com
E-mail: mpatterson@wcsr.com
E-mail: nverna@wcsr.com

Attorneys for Richter Advisory Group Inc.

WCSR 35189770v7